UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Julien A. S., | Case No. 2:23-cv-00180-DJA |
| Plaintiff, | |
| v. | Order |
| Martin O'Malley[1], Commissioner of Social Security, | |
| Defendant. | |

Before the Court is Plaintiff Julien A. S.'s motion for remand (ECF No. 17) and the Commissioner's cross motion to affirm (ECF No. 19). Plaintiff filed a reply. (ECF No. 22). Because the Court finds that the ALJ's RFC was supported by substantial evidence, the Court denies Plaintiff's motion for remand (ECF No. 17) and grants the Commissioner's cross motion to affirm (ECF No. 19). The Court finds these matters properly resolved without a hearing. LR 78-1.

## BACKGROUND

**I.   Procedural history.**

Plaintiff filed an application for supplemental security income on March 25, 2020, alleging disability as of the application date. (ECF No. 17 at 3). His applications were denied at the initial and reconsideration levels. (*Id.*). Plaintiff appeared before an administrative law judge ("ALJ") on November 9, 2021. (*Id.*). On January 27, 2022, the ALJ issued an unfavorable decision. (*Id.*). The Appeals Council denied review on December 15, 2022, making the ALJ's decision the final decision of the Commissioner. (*Id.*).

---

[1] Martin O'Malley is now the Commissioner of Social Security and substituted as a party.

## II. The ALJ decision.

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a). (AR 19-30). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 25, 2020, the application date. (AR 21). At step two, the ALJ found that Plaintiff has the following severe impairments: autism spectrum disorder, borderline intellectual functioning, and learning disorder. (AR 21). At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20-22). In making this finding, the ALJ considered Listings 12.04, 12.05, 12.06, 12.10, and 12.11. (AR 22).

At step four, the ALJ found that Plaintiff has an RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> He can understand, remember, and carry out simple tasks, with concentration, persistence, and pace for such work, characteristic of unskilled occupations. He can interact appropriately with the public in brief, infrequent, and non-intensive encounters and can adapt to usual workplace changes.

(AR 25).

At step five, the ALJ found that Plaintiff has no past relevant work but that Plaintiff could perform occupations such as wall cleaner, industrial sweeper/cleaner, and counter supply worker. (AR 29). Accordingly, the ALJ found that Plaintiff had not been disabled from March 25, 2020. (AR 30).

## STANDARD

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the

pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

### DISABILITY EVALUATION PROCESS

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id*. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id*. § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20

C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing

evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

## ANALYSIS AND FINDINGS.

**I.    Whether the RFC is supported by substantial evidence.**

   *A.    The parties' arguments.*

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because, in coming up with that RFC, the ALJ improperly found the state agency psychological consultants Ana Olivares, Psy.D. and Allie Wright, Psy.D.'s opinions persuasive while finding consultative examiner Mark Zucker, Psy.D.'s opinion unpersuasive. (ECF No. 17 at 7). Dr. Zucker opined that Plaintiff was restricted to one-step instruction and duties that would need to be repetitive in nature, in a structured environment where he is supervised/assisted and has tolerant co-workers and supervisors. (*Id.*). Drs. Olivares and Wright, on the other hand, opined that Plaintiff could understand and remember simple instructions and work-like procedures; could complete simple tasks; could interact appropriately with the public in brief, infrequent and non-intensive encounters, and could adapt to usual workplace changes. (*Id.* at 6). Plaintiff points out that the record more accurately supports Dr. Zucker's opinion because of the following portions:

- Plaintiff's mother's testimony that, while she believed her son could perform a simple job, she further testified about other factors that could impact his work and that they were exploring other options through Opportunity Village.[2]  (AR 53).
- Plaintiff's testimony that although he volunteered at a museum and eventually "got the hang of it," Plaintiff was originally placed at the museum by Grant a Gift Autism Foundation and had a job coach. (AR 44-45, 350-53). Plaintiff points out that it does not appear that Drs. Olivares and Wright reviewed this report or were aware of these facts and thus, their opinions do not represent a complete picture of Plaintiff's impairments.

---

[2] Plaintiff explains that Opportunity Village is a non-profit organization that empowers people with intellectual and developmental disabilities. (ECF No. 17 at 8).

- Testing results from the UNLV Auckerman Center for Autism, which testing revealed that Plaintiff had deficiencies including inattention and distractibility that led to poor performance, anxiety, and feeling overwhelmed and flustered. (AR 277-284). During that testing Plaintiff was also diagnosed with a Specific Learning Disability in reading and writing, ADHD, and mild Asperger's. (AR 285). The testing results concluded that Plaintiff would require accommodations in higher education or vocational training endeavors. (AR 285).
- School records demonstrating that Plaintiff's attention and self-stimulating behavior was suspected to affect his poor standardized test scores; that he was permitted an extra three days to submit assignments and double the time to complete tests; and that his Individualized Education Plan ("IEP") indicated high levels of distractibility, autistic social skills, and self-stimulating behavior of a nervous type. (AR 246, 252, 345).
- A mental health assessment from Nueva Vida Mental Health which revealed that Plaintiff was disheveled; his behavior was rigid and tense; his mood was noted to be apprehensive, anxious, and depressed; and he had distorted thinking, limited insight, and impaired memory and judgment. (AR 318-26).

(ECF No. 17 at 7-9).

Plaintiff argues that these records demonstrate that the ALJ erred in finding the state agency physician's opinions persuasive and those of Dr. Zucker not persuasive. (*Id.* at 9). Plaintiff asserts that the error was not harmless because "[p]roper evaluation of the evidence of record could lead to a different result. Dr. Zucker's opinions, if properly evaluated, would support a finding of disability. The vocational expert stated that there are no one-step instruction jobs." (*Id.*). Plaintiff thus asserts that the Court should remand for further proceedings. (*Id.*).

The Commissioner responds that Drs. Olivares' and Wright's opinions were both supported by their summaries and consistent with the record and that Plaintiff's argument interprets the evidence of his impairments differently "as if he had been the trier of fact." (ECF No. 19 at 4). The Commissioner points to the following portions of the record as being consistent with Drs. Olivares' and Wright's opinions and at odds with Dr. Zucker's opinion:

- Plaintiff's mother's testimony that Plaintiff would be able to work a simple job. (AR 53).
- Plaintiff's testimony that he completed high school with a regular diploma—which the Commissioner argues "suggest[s] that he could engage in more than one-step tasks,"—and that Plaintiff thought that he could go on a two-year mission with his church including "a lot of traveling and going out of town."[3] (AR. 42, 47).
- Plaintiff's testimony that he was able to work at the Atomic Testing Museum despite his impairments and, while he had some difficulty interacting with others, eventually "got the hang of it" after just a few months on the job. (AR 42, 44-45). Plaintiff also testified that he was laid off because of lack of attendance, not because of any problems doing the work.[4] (AR 42).
- Testing results from the UNLV Auckerman Center for Autism's neuropsychological examination of Plaintiff revealed that Plaintiff's "intellectual abilities are in the average range for both his verbal and nonverbal abilities." (AR 284).
- Dr. Zucker's own examination in which Dr. Zucker found that Plaintiff was "able to complete all of the tasks requested of him independently" and that Plaintiff's "ability to sustain attention, concentrate, and exert mental control [was] in the average range." (AR 305-306).

---

[3] While Plaintiff testified that he thought he would be able to go on a mission that "involved a lot of traveling and going out of town," (AR 47), his mother's testimony appeared to contradict that (AR 53). She testified that "we're trying to help him understand his disability. You know, like one big thing is in our church, all the boys go on missions, and there's a way that he can do that and be at home, but like he doesn't understand that he's not really—that he can't really go away." (AR 53). However, Plaintiff does not address the Commissioner's argument on this point in reply. Because the Court cannot manufacture arguments for Plaintiff, the Court does not address this further. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

[4] Plaintiff's mother's testimony also indicated that she was unsure if Plaintiff was laid off because of his lack of attendance or because of his performance. (AR 56). She testified that she did not know whether he had been laid off "because of his performance or what…" because Plaintiff had been "a volunteer for over a year, and then [the museum] said, you know, we'll offer you some hours and pay you, and then, I would say within two months, they cut his—they offered him two days, and then they cut him down to one, and now, within the past month, they said we just don't have the need for you right now. We'll contact you, and they haven't." (AR 56). But again, Plaintiff does not address the Commissioner's argument on this point in reply.

(ECF No. 19 at 3-4).

The Commissioner argues that the key question for the Court is not whether substantial evidence could support a finding of disability, but whether there is substantial evidence to support the Commissioner' actual finding. (*Id.* at 4-5). Because more than a scintilla of evidence supports the ALJ's assessment, despite Plaintiff's alternative interpretation of the evidence, the Commissioner argues that the Court should affirm. (*Id.*).

Plaintiff replies that the portions of the record on which the Commissioner relies to make his arguments do not constitute the whole picture of his capabilities. (ECF No. 22 at 3).

- While Plaintiff completed high school with a regular diploma, his school records reveal that his attention and self-stimulating behavior was suspected to affect his poor standardized test scores. (AR 246). He also needed additional time to complete tests and assignments. (AR 345).
- While the UNLV Auckerman Center for Autism's neuropsychological testing revealed that Plaintiff's overall intellectual abilities were average in both verbal and nonverbal abilities, that testing also revealed that he struggled with immediate attention, working memory, timed tasks, and math tasks; that he had slower processing speed and verbal fluency; and that he would benefit from transition services related to social-emotional, vocational, and educational accommodations and interventions. (AR 284).
- While Plaintiff subjectively believed he could go on a two-year mission with his church and travel, this subjective belief is not dispositive in light of psychological testing demonstrating Plaintiff's struggles. (AR 42, 47).
- While Plaintiff could work, the Commissioner ignores that Plaintiff needed a job coach. (AR 350-53).

(ECF No. 22 at 3-5).

Ultimately, Plaintiff argues that the ALJ failed to properly evaluate Dr. Zucker's opinions in accordance with these records and that the Court should remand the matter for proper evaluation of Dr. Zucker's opinions. (*Id.* at 5).

### B. Analysis.

An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. *Miller v. Kijakazi*, No. 2:22-CV-00355-EJY, 2023 WL 1525429, at *6–7 (D. Nev. Feb. 3, 2023).

For claims filed on or after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore, the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Even under the new regulations, the ALJ is obligated to consider the opinions from each medical source and cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see Kramer v. Kijakazi*, No. 20-cv-2065-GPC(AHG), 2022 WL 873630, at *4 (S.D. Cal. Mar. 24, 2022). "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

Here, the ALJ's RFC is supported by substantial evidence. The ALJ thoroughly discussed the objective medical and other evidence, including Plaintiff's and his mother's testimony. While Plaintiff asks the Court to interpret the evidence upon which the ALJ relied differently, it is the role of the ALJ to interpret the evidence and determine the RFC.

Both Plaintiff and the Commissioner point to largely the same evidence to support their conclusions. Plaintiff points to portions of his mother's testimony, his testimony, test results from the UNLV Auckerman Center for Autism, his school records, and an assessment from Nueva Vida Mental Health that could be deemed consistent with Dr. Zucker's opinion. But the Commissioner points to portions of those same records that could be deemed consistent with Dr. Olivares' and Dr. Wright's opinions. Ultimately, the evidence appears to support more than one rational interpretation. And in this instance, the Court must defer to the Commissioner's interpretation. The Commisioner's final decision—that Dr. Zucker's opinion was unpersuasive and that Drs. Olivares' and Wright's opinions were persuasive in determining Plaintiff's RFC—is supported by substantial evidence. Indeed, the ALJ appropriately considered the supportability and consistency factors when analyzing Dr. Zucker's, Dr. Olivares', and Dr. Wright's opinions. (AR 27-28). And Plaintiff does not argue that the ALJ erred in considering these factors, simply that the ALJ came to the wrong conclusion when doing so. Because the Court finds that the

ALJ's RFC was supported by substantial evidence, the Court denies Plaintiff's motion for remand and grants the Commissioner's cross motion to affirm.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 17) is **denied.**

**IT IS FURTHER ORDERED** that the Commissioner's cross motion to affirm (ECF No. 19) is **granted.** The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: January 31, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE